IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| REGIONS BANK, as Revolving Credit Lender and as Administrative Agent and Collateral Agent for REGIONS COMMERCIAL EQUIPMENT FINANCE, LLC, as Term Lender, <br>      Plaintiff, <br><br> v. <br><br> M/V MAXX B, *in rem*, M/V MISS ALLISON, *in rem*, and M/V MISS LILLIE, *in rem*, <br>      Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION 1:22-00365-KD-MU <br> )  IN REM <br> ) <br> ) <br> ) <br> ) |

**ORDER**

This matter is before the Court on the Plaintiff's Supplement to its Second "Motion for Interlocutory Sale of Vessels under Rule E(9)" for the M/V MAXX B (Official No. 641456), M/V MISS ALLISON (Official No. 650648), and M/V MISS LILLIE (Official No. 64610) (the Vessels) with evidentiary submissions in support (Docs. 23, 24). (Doc. 26).

**I.    Background**

On September 14, 2022, Plaintiff filed an *in rem* admiralty Verified Complaint and Rule 9(h) maritime claim seeking a warrant of arrest per Supplemental Rule for Admiralty or Maritime Claims Rule C against the Vessels, citing 28 U.S.C § 1333 and 46 U.S.C. § 31325 as the bases for jurisdiction (Ship Mortgage Act). (Doc. 1 at 1). In the Verified Complaint, Plaintiff explained that a February 28, 2020 Credit Agreement executed with Whitaker Marine Group LLC (Whitaker) resulted in Plaintiff opening a revolving credit and term loan in favor of Whitaker. As security, Plaintiff and Whitaker executed a First Preferred Fleet Mortgage on February 28, 2020 which identified six (6) secured vessels – including the three (3) vessels at issue in this case. On November

1

20, 2020, Plaintiff notified Whitaker that it had breached the Credit Agreement and was in default. On July 19, 2021, Plaintiff and Whitaker executed a Forbearance Agreement through which Whitaker acknowledged and agreed that the events of default had occurred under the Credit Agreement and other loan documents. The Forbearance Agreement terminated on July 21, 2021.

Thereafter, Plaintiff filed a Rule C arrest of the Vessels. The terms of the First Preferred Fleet Mortgage include that when Whitaker defaults, a maritime lien is created against the Vessels in favor of Plaintiff in the amounts due (alleged to be $6,400,622.74 plus $911,128.57 in interest and other costs).  On September 15, 2022, the motion to arrest the Vessels was granted (Doc. 4), and the Vessels were arrested on September 16, 2022 (Docs. 7-9).[1]  On September 28, 2022, Plaintiff filed a Notice regarding the arrest of the Vessels for publication in the Press Register.  (Doc. 13).  The Notice was published in the Press Register September 30, October 7, and October 14, 2022, and provided: "Notice is hereby given that, pursuant to Supplemental Rule C ... all claims for possession or an interest in said Vessels are required to be filed with the Clerk of the United States District Court, Southern District of Alabama, on or before October 28, 2022. Any claimant must file an Answer within twenty-one (21) days of filing a claim; otherwise, default may be entered and condemnation ordered."  (Doc. 13 at 2).

On October 21, 2022, Plaintiff filed a Rule E(9) Motion for Interlocutory Sale of the Vessels (including each vessel's respective engines, freight, tackle, appurtenances, apparel, etc.) (Doc. 14). As grounds, Plaintiff alleges that Whitaker has not procured the release of the Vessels since their arrest, is causing "unreasonable delay," and the Vessels are subject to "deterioration, decay, or injury and incurring disproportionate expense."  Specifically, per Plaintiff:

> 1) Public notice of the action and arrest was published in the Press Register 9/30, 10/7, and 10/14 (Doc. 14-1 (Affidavit Principal Clerk of the Publisher));

---

[1] Plaintiff also filed a motion to appoint a substitute custodian which was granted.  (Docs. 3, 6).

2) No claims have been filed by other interested parties;

3) Expenses/costs will be incurred for the safekeeping of said Vessels, which if allowed to continue until the end of this action will be excessive or disproportionate – Regions has incurred $15,000 for *in custodia legis* expenses, plus U.S. Marshal's expenses of $7,500, and substitute custodian expenses are being incurred at the rate of $10,500 per month since September 16, 2022;

4) The Vessels are subject to deterioration, decay, or injury by being detained in custody - *i.e.*, wasting assets; and

5) The proceeds from the interlocutory sale of the Vessels, if deposited in the Registry of the Court will serve as an acceptable and desirable substitute for the Vessels and would eliminate mounting costs and the possibility of damage or wastage to the Vessels.

On October 28, 2022, non-parties James Elmwood Repair & Maintenance LLC and Paducah River Fuel Services LLC separately filed Verified Complaints in Intervention asserting their respective interests in the Vessels. (Docs. 15, 16).

On November 8, 2022, the Court denied Plaintiff's motion stating as follows:

First, The Court is not satisfied that the grounds for the interlocutory sale of the Vessels are sufficiently stated ... Plaintiff has only made generalized statements of deterioration (no affidavits, no known issues with the Vessels, no ongoing repairs, no sudden damage, etc.). Plaintiff has submitted no evidence of decay, injury, or wastage either. Rather, Plaintiff simply summarily asserts deterioration.

Second, there has not been an unreasonable delay by Whitaker. Case law provides that at least 4 months must pass since the arrest to justify unreasonable delay by the vessel owner (i.e., that length of time passed from the arrest and the vessel owner failed to take any action such as post a bond to secure a vessel's release). Only 35 days had passed from the arrest to the date of Plaintiff's motion.

Third, Plaintiff claims excessive or disproportionate expenses, however, Plaintiff bases this factor to support a sale on the expectation of such expenses being incurred in the future -- through the duration of this litigation (not at present). And the expenses Plaintiff is presently incurring were prompted by, and are a result of, its motions to arrest the Vessels and to appoint a substitute custodian.

Fourth, Plaintiff initiated this litigation based on the Ship Mortgage Act, 28 U.S.C. § 1333 and 46 U.S.C. § 31325 (Doc. 1 at 1 at ¶1), to enforce its lien against the Vessels based on the First Preferred Fleet Mortgage with Whitaker. This means that "actual notice" of an arrest must be given to the master or individual in charge of the Vessels

> per Section 31325(d)(1)(A)-(C): "... **Actual notice of a civil action brought .... to enforce a maritime lien, must be given in the manner directed by the court** to-- (A) the master or individual in charge of the vessel; (B) any person that recorded under section 31343(a) or (d) of this title an unexpired notice of a claim of an undischarged lien on the vessel; and (C) a mortgagee of a mortgage filed or recorded under section 31321 of this title that is an undischarged mortgage on the vessel." Here, the type of notice issued to the entity which appears to be the owner of the Vessels, Whitaker, is unknown. And the Court lacks information as to any other master or individual in charge of the Vessels. At most, Plaintiff asserts Whitaker "has been informed of the arrest…." (Doc. 14 at 2); the Marshals' returns of service on the Arrest (Docs. 7-9) state service was made "by posting on the vessel[s'] bridge[s] a no trespass notice, writ of arrest, posted signs of writ of arrest[;]" and the only discernible notification issued, regarding the arrest, was via publication (a generalized notice) (Doc. 13). This is insufficient notice in this case.
>
> ***
>
> Thus, the record is unclear as to whether Plaintiff has complied with Section 31325(d)(1) and provided "actual notice" to the master or individual in charge of the Vessels. Plaintiff has not provide[d] the Court with proof of service of actual notice.[2]
>
> <u>Fifth</u>, the deadline for any claims for possession or an interest in the Vessels (October 28, 2022) had not passed when Plaintiff filed its motion (October 21, 2022); thus, the motion is premature. And on October 28, 2022, non-parties James Elmwood Repair & Maintenance LLC and Paducah River Fuel Services LLC separately filed Verified Complaints in Intervention asserting their respective interests in the Vessels. (Docs. 15, 16). <u>See</u>, <u>e.g.</u>, <u>Canaveral Port Auth. v. M/V</u> <u>Surfside Princess</u>, 2010 WL 11651212, *2 (M.D. Fla. May 3, 2010) ("... it is premature to order the interlocutory sale at this juncture while other lien claimants are still filing pleadings and seeking to intervene to assert their claims. The Court is far from ready to determine the priority of claims, with parties still seeking to intervene ...
>
>> [2] Moreover, to the extent that Plaintiff is intending to foreclose on the Preferred Mortgage under 46 U.S.C. § 31325(d)(1)(B) (which is unclear), **actual notice of a civil action to foreclose upon a preferred mortgage "must be given in the manner directed by the court to** . . . any person that recorded under 31343(a) or (d) of this title an unexpired notice of a claim of an undischarged lien on the vessel."

(Doc. 21 at 5-8 (emphasis added)).

On January 3, 2023, Plaintiff filed the Second Motion for interlocutory sale, notifying the Court of the following:

- On November 14, 2022, Plaintiff served the record Owner of the vessels, Whitaker Marine Group LLC with actual notice of this action and the arrest of the Vessels via

4

    service to its registered agent for service of process (certified mail). (Doc. 23-1). The Owner, via its appointed Chief Restructuring Officer Joseph E. Vierling submitted an Affidavit acknowledging receipt of actual notice of this action and of the arrest of the vessels. (Doc. 23-2 at 2 at ¶7 (Aff. Vierling)).

- In the Affidavit, Vierling states that based on the consent and authorization of the company Whitaker and as its CRO, it is in Whitaker's best interest to consent to the interlocutory sale of the vessels to minimize custodial costs incurred by Plaintiff and so the maximum amount of sales proceeds may be applied to the Owners' indebtedness. (Doc. 23-2 at 2 at ¶6).

- Exhibits 4, 5, and 6 to the Second Motion for interlocutory sale consist of Abstracts of Title from the National Vessel Documentation Center for the M/V MAXX B, M/V MISS ALLISON, AND M/V MISS LILLIE, showing the lienholders of record for each vessel. (Docs. 23-3 to 23-6).[2] Per Plaintiff, Exhibits 7, 8, 9, 10, and 11 (Docs. 23-7 to Doc. 23-11) establish actual notice of this action and of the arrest of these vessels to each lienholder with one (1) exception. The exception is for Service on Riverview Marina, Inc., 130 Yacht Basin Dr, Demopolis, AL, 36732 was attempted but service was returned unclaimed on November 3, 2022, and while Plaintiff again attempted service via its registered service agent on November 10, 2022, such was returned unclaimed December 5, 2022. (Doc. 23-12)).

- The only claimants that have filed Complaints in Intervention are James Elmwood Repair & Maintenance, LLC (Doc. 15...) and Paducah River Fuel Services, LLC (Doc. 16...). Undersigned counsel has conferred with counsel for both entities, and neither entity has an objection to the interlocutory sale of the Vessels to reduce the costs of this action and potential deterioration of the Vessels.

- Expenses and costs will be incurred for the safekeeping of said Vessels while under seizure, which expenses if allowed to continue until final termination of this cause will be excessive or disproportionate.

- Per the affidavit of Alan Swimmer, President of National Maritime Services, Inc., the Vessels are subject to deterioration, decay or injury by being detained in custody during the pendency of this action. (See Ex. 13....) As the court-appointed Substitute Custodian for the Vessel, Mr. Swimmer is familiar with the current location and condition of the Vessels. (Id. at ¶ 6.) As stated by Mr. Swimmer, steel-hulled vessels sitting idly in brackish water without routine maintenance are susceptible to accelerated deterioration. (Id. ¶7.) In addition, the Vessels have not been properly conditioned for lay-up status, making their hulls, engines, machinery and electrical equipment susceptible to accelerated corrosion and general deterioration. (Id.) Such corrosion and deterioration of the Vessels or their components will reduce the value of the Vessels at the Marshal's sale. (Id. at ¶ 8.) Any repairs that are required to recondition the Vessels for a return to service will decrease the amount that buyers

---

[2] The Vessels are referenced in the abstracts by their Official Numbers: M/V MAXX B (641456) (Doc. 23-4), M/V MISS ALLISON (650648) (Doc. 23-5), and M/V MISS LILLIE (64610) (Doc. 23-6).

will be willing to pay to acquire the Vessels, which are thus wasting assets. (Id.)

- Plaintiff has already incurred approximately $25,000 for *in custodia* legis expenses, plus United States Marshal's expenses of $7,500. Substitute custodian expenses are being incurred at the rate of approximately $10,500 per month since September 16, 2022.

- The proceeds from the interlocutory sale of the Vessels, if deposited in the registry of the Court will serve as an acceptable and desirable substitute for the Vessels and would, in addition, accomplish the purpose of eliminating mounting costs and the possibility of damage or wastage to the Vessels.

Based on the foregoing, Plaintiff sought interlocutory sale of the vessels to minimize expenses.

On January 17, 2023, the Court found, in relevant part, that issues remained regarding the "actual notice" required pursuant to the Ship Mortgage Act, 28 U.S.C. § 1333 and 46 U.S.C. § 31325 (Doc. 1 at 1 at ¶1) for Plaintiff to enforce its lien against the Vessels based on the First Preferred Fleet Mortgage with Whitaker Marine Group LLC.  (Doc. 26).  The Court noted as follows:

> Per Plaintiff, such has been accomplished on Whitaker Marine Group LLC (Section 31325(d)(1)(A)-(C)) by sending that LLC notice via certified mail. (Doc. 23-2 at 1-2 ¶¶5-7 (Aff. Vierling)). And, more than 14 days have passed since actual notice occurred and Whitaker has not filed a claim in this action but instead, consents to the interlocutory sale of the vessels. (Id.)  Similarly, Plaintiff references Exhibits 7, 8, 9, 10, and 11 (Docs. 23-7 to Doc. 23-11) as providing "actual notice" of this action and of the arrest of these vessels to each lienholder with one (1) exception -- Riverview Marina, Inc.
>
> Plaintiff asserts that Exhibits 4, 5, and 6 to the Second Motion for interlocutory sale consist of Abstracts of Title from the National Vessel Documentation Center for the M/V MAXX B, M/V MISS ALLISON, AND M/V MISS LILLIE, showing the lienholders of record for each vessel.  (Docs. 23-3 to 23-6).[3] Per Plaintiff, Exhibits 7, 8, 9, 10, and 11 (Docs. 23-7 to Doc. 23-11) establish "actual notice" of this action and of the arrest of these vessels to each lienholder with one (1) exception (Riverview Marina, Inc., 130 Yacht Basin Dr, Demopolis, AL, 36732 was attempted but service was returned unclaimed on November 3, 2022, and while Plaintiff again attempted service via its registered service agent on November 10, 2022, such was returned unclaimed December 5, 2022).  (Doc. 23-12)).
>
> For the **M/V MAXX B** (Official No. 641456), the lienholders identified in the 7/25/22 abstract following entry of the Regions Preferred Mortgage (liens which do not appear to have been satisfied) are: **1) James Elmwood Repair & Maintenance, LLC**, 4600 Clarks

---

[3] The Vessels are referenced in the abstracts by their Official Numbers: M/V MAXX B (641456) (Doc. 23-4), M/V MISS ALLISON (650648) (Doc. 23-5), and M/V MISS LILLIE (64610) (Doc. 23-6).

> River Road, Paducah, KY, 42003 (7/15/21 Notice of Claim of Lien, Lien established 8/18/20) (Doc. 23-4 at 5); **2) United Power Systems, LLC,** 3622 West Main Street, Gray, LA, 70359 (12/17/21 Notice of Claim of Lien, lien established 9/8/20) (Doc. 23-4 at 6); **3) ACBL Transportation Services, LLC**, 1701 E. Market Street, Jeffersonville, IN, 47130 (6/9/22 Notice of Claim of Lien, lien established 1/6/21) (id.); and **4) Riverview Marina, Inc**., 130 Yacht Drive, Demopolis, AL (6/22/22 Notice of Claim of Lien, lien established 11/8/20) (id.).
>
> For the **M/V MISS ALLISON** (Official No. 650648), the lienholders identified in the 7/25/22 abstract following entry of the Regions Preferred Mortgage (liens which do not appear to have been satisfied) are: **1) United Power Systems, LLC,** 3622 West Main St., Gray, LA, 70359 (12/17/21 Notice of Lien, lien established 8/19/20) (Doc. 23-5 at 8); and **2) Cooper Marine & Timberlands Corp**., P.O. Box 1566, Mobile, AL 36633 (4/19/21 Notice of Claim of Lien, lien established 9/29/20) (Doc. 23-5 at 8) with Satisfaction of Claim of Lien "pending" as of 8/4/22 (Doc. 23-5 at 8-9).
>
> For the **M/V MISS LILLIE** (Official No. 64610)**,** the lienholders identified in the 7/25/22 abstract following entry of the Regions Preferred Mortgage (liens which do not appear to have been satisfied) are: **1) Paducah River Fuel Services, LLC,** 4500 Clarks River Road, Paducah, KY 42003 (7/15/21 Notice of Claim of Lien, lien established 11/20/20) (Doc. 23-6 at 7); **2) United Power Systems, LLC,** 3622 West Main Street, Gray, LA 70359 (12/17/21 Notice of Claim of Lien, lien established 9/10/20) (Doc. 23-6 at 8); and 3) **Riverview Marina, Inc**., 130 Yacht Basin Drive, Demopolis, AL (6/22/22 Notice of Claim of Lien, lien established 10/31/20) (Doc. 23-6 at 8).
>
> ∗∗∗
>
> In support of its motion as to **United Power Systems, LLC** and **ACBL Transportation Services LLC**, Plaintiff has submitted certified mail return receipt cards: ACBL Transportation Services, LLC signed by unknown individual "K. Perra" on 10/15/22 (Doc. 23-7) and United Power Systems, LLC signed by unknown individual "Claire Traylor" on an illegible date (Doc. 23-10 at 1). In order to establish actual notice, plaintiff needs to confirm on the record that the person who signed for the mail was an authorized agent of each entity.
>
> .... Plaintiff has not provided any information regarding listed lienholder **Cooper Marine & Timberlands** even though per the abstract, satisfaction of that lien remained pending.
>
> ... Plaintiff is **ORDERED to supplement** its motion to verify actual notice (by receipt of mail by authorized agent) as to **United Power Systems, LLC** and **ACBL Transportation Services LLC**, and **Cooper Marine & Timberlands Corp.** It is **ORDERED** that Plaintiff's Second Motion ... shall be **HELD IN ABEYANCE** until ... Plaintiff files a **supplement**.

(Doc. 26).

On February 23, 2023, Plaintiff filed its Supplement with exhibits in support addressing actual notice (by receipt of mail by authorized agent) as to United Power Systems, LLC and ACBL

7

Transportation Services LLC, and Cooper Marine & Timberlands Corp. (Doc. 26). A review of Plaintiff's Supplement (and exhibits in support) confirms the following assertions by Plaintiff:

> Exhibit 14 is an updated Abstract of Title from the National Vessel Documentation Center for the M/V MISS ALLISON, Official Number 650648, the only vessel on which Cooper Marine & Timberlands Corporation had filed a lien. The updated Abstract of Title reflects that a Satisfaction of Claim of Lien was recorded on August 4, 2022, thus terminating the claim of lien of Cooper Marine & Timberlands Corporation.
>
> Exhibit 15 is a printout from the web page of the Indiana Secretary of State indicating that ACBL Transportation Services, LLC is an active corporation in that state and that its registered agent for service of process is Cogency Global, Inc., 9221 Crawfordsville Road, Indianapolis, IN 46234. Exhibit 16 is a return receipt demonstrating that Plaintiff's Notice of Action Against and Arrest of Vessels was delivered to Cogency Global, Inc., as registered agent for ACBL Transportation Services, LLC on January 24, 2023.
>
> Exhibit 17 is an Affidavit of Daniel Martin, a process server engaged by Plaintiff to serve its Notice of Action Against and Arrest of Vessels on United Power Systems, LLC in Houma, Louisiana. The Affidavit confirms that the Notice was personally served on Becky Robichaux, United Power Systems' Office Coordinator, on February 6, 2023 ...
>
> More than fourteen (14) days have passed since actual service of the Notice of Action Against and Arrest of Vessels on authorized agents of ACBL Transportation Services, LLC and United Power Systems, LLC, and neither company has filed a Notice of Claim...

(Doc. 26 at 2; Doc. 26-1 at 10 (Cooper); Docs. 26-2 and 26-3 (ACBL); Doc. 26-4 (United)).

## II.   Conclusions of Law

Per Supplemental Admiralty Rule E(9)(a)(i), a court may order the interlocutory sale of all or part of an attached or arrested property, with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await the court's further orders, if: (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or disproportionate; or (C) there is an unreasonable delay in securing release of the property. To obtain an order for an interlocutory sale, a plaintiff need only show the existence of one of these three criteria. 20th Century Fox Film Corp. v. M.V. Ship Agencies, 992 F. Supp. 1434, 1437 (M.D. Fla. 1997)

(citing Silver Star Enterprises, Inc. v. M/V Saramacca, 19 F.3d 1008, 1014 (5th Cir.1994)). Because Rule E(9) provides for interlocutory sales, it "does not require, or even mention, the resolution of the merits of any particular claim; instead, the Rule focuses entirely on avoiding the recognized complications associated with maintaining a vessel under arrest." Freret Marine Supply v. M/V Enchanted Capri, 2001 WL 649764, *1 (E.D. La. 2001). See also Merchants Nat'l Bank of Mobile v. Dredge General G.L. Gillespie, 663 F.2d 1338 (5th Cir. 1981) (affirming order of interlocutory sale in action to foreclose preferred ship mortgage). All sales of property must be made "by the marshal or a deputy marshal, or by other person or organization having the warrant, or by any other person assigned by the court where the marshal or other person or organization having the warrant is a party in interest." Fed. Supp. R. E(9)(b). The proceeds of such sale must be paid forthwith into the Court's registry to be disposed of according to law. Id.

Concerning claims of deterioration, decay, or injury, courts typically require the moving party to offer some type of evidence demonstrating that the subject vessel is liable to deterioration, decay, or injury, rather than allowing the moving party to rely on generalized statements regarding such conditions in order to support an interlocutory sale. See, e.g., Seacor Marine LLC v. FPC Sea Striker, 2014 WL 5018888, *3 (M.D. Fla. Oct. 7, 2014) (recognizing that the claimants had offered no evidence of deterioration, aside from their general assertion that the non-use of the vessel rendered it susceptible to deterioration and depreciation in value); Merch. Nat'l Bank of Mobile v. Dredge Gen. G.L. Gillespie, 663 F.2d 1338, 1342 (5th Cir. 1981) (holding the district court's assessment that the vessels were liable to deterioration was not clearly erroneous where the district court made "detailed findings" and received expert testimony). Some courts consider diminution-in-value as a factor when evaluating liability to deterioration, decay, or injury. See, e.g., Jaffe v. M/S BREAKING WIND, 2017 WL 7731867, *6 (S.D. Fla. June 13, 2017) (defendant-vessel was liable to

9

deterioration, decay, or injury because, among other reasons, there was testimony at a hearing that the vessel was a "depreciating asset" and contrary evidence was not presented) *R&R adopted*, 2017 WL 7732306 (S.D. Fla. June 28, 2017).

With regard to unreasonable delay, as a general rule defendants are given at least four (4) months to bond a vessel absent some other considerations. See, e.g., Bank of Rio Vista v. Vessel Captain Pete, 2004 WL 2330704, *2 (N.D. Cal. 2004) (citation and internal quotations omitted). See also e.g., Vineyard Bank v. M/Y Elizabeth 1, U.S.C.G. Official No. 1130283, 2009 WL 799304 (S.D. Ca. 2009) (holding that the failure to secure the release of a vessel during the four months after arrest constituted an unreasonable delay); Boland Marine & Mfg. Co., L.L.C. v. A.G. Navajo, 2002 WL 31654856 (E.D. La. 2002) (same); Bollinger Quick Repair, L.L.C. v. Le Pelican M/V, 2000 WL 798497 (E.D. La. 2000) (same); Ferrous Fin. Serv. Co. v. O/S Arctic Producer, 567 F. Supp. 400, 401 (W.D. Wash. 1983) (same). Courts have previously found a 7 month delay since the time of a vessel's arrest to be unreasonable where an owner had not posted a bond, entered into a stipulation, or otherwise attempted to secure the release of the vessel under Supplemental Rule E(5). M.D. Moody & Sons, Inc. v. McLaren, 2012 WL 13136843, *2 (M.D. Fla. July 30, 2012) ("[T]he passage of seven months since the time of the Endeavor's arrest amounts to an unreasonable delay in securing the release of the vessel[]"), *R&R adopted,* 2012 WL 13136840,*1 (M.D. Fla. Nov. 15, 2012); Seacor Marine LLC, 2014 WL 5018888, *3 (finding an unreasonable delay where the vessel had been in the substitute custodian's possession for over eight months and the vessel's owner had not "posted bond or otherwise attempted to secure the release of the Vessel"); 20th Century Fox Film Corp. v. M.V. Ship Agencies, 992 F. Supp. 1434, 1438 (M.D. Fla. 1997) ("the eight month delay, with no release in sight and adjudication of the merits of the claim still months away, is 'unreasonable'" and sale is warranted on that basis. *Silver Star Enterprises, Inc. v. M/V Saramacca*, 19 F.3d 1008, 1014 (5th

10

Cir.1994) (seven month delay is unreasonable); *Ferrous Financial Services Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D.Wash.1983) (four month delay is unreasonable)[]").

Upon consideration, the Court finds as follows.  First, the Court is satisfied that Plaintiff has sufficiently supported its prior statements of deterioration of the Vessels with an Affidavit describing the issues with the Vessels, potential for damage, etc.  Specifically, as detailed *supra*, the Substitute Custodian's Affidavit (per Mr. Swimmer) asserts that the Vessels are subject to deterioration, decay, and potential visitor injury, and that as currently situated (idle in brackish water) they are susceptible to accelerated corrosion or deterioration which will reduce their value thus becoming depreciating assets. (Doc. 23-13 (Aff. Swimmer)).

Second, while there has still not been an unreasonable delay by Whitaker (the Owner), the Owner, via its CRO Vierling, consents to the interlocutory sale of the Vessels. (Doc. 23- at (Aff. Vierling)). In the Affidavit, Vierling states that based on the consent and authorization of the company (Whitaker) and as its CRO, it is in Whitaker's best interest to consent to the interlocutory sale of the vessels to minimize custodial costs incurred by Plaintiff and so the maximum amount of sales proceeds may be applied to the Owners' indebtedness.  (Doc. 23-2 at 2 at ¶6).  And Vierling states he has executed the Affidavit, in part, to evidence the company's consent to the interlocutory sale of the Vessels. (Id. at ¶7).

Third, while the Court does not agree with Plaintiff's characterization of excessive or disproportionate expenses based on the *expectation* of such expenses being incurred *in the future* (through the duration of this litigation (not at present)), the undersigned acknowledges the parties' interest in minimizing expenses as well as in garnering the maximum sales proceeds to be applied to Whitaker's indebtedness by proceeding with the interlocutory sale.

Fourth, the deadline for any claims for possession or an interest in the Vessels (October 28,

2022) has now passed. And on October 28, 2022, non-parties James Elmwood Repair & Maintenance LLC and Paducah River Fuel Services LLC separately filed Verified Complaints in Intervention asserting their respective interests in the Vessels. (Docs. 15, 16). And per Plaintiff, those Claimants have no objections to the interlocutory sale of the Vessels, as a means to reduce the costs of this action and potential deterioration of the Vessels.

<u>Fifth</u>, the Court addresses the "actual notice" required pursuant to the Ship Mortgage Act, 28 U.S.C. § 1333 and 46 U.S.C. § 31325 (Doc. 1 at 1 at ¶1) for Plaintiff to enforce its lien against the Vessels based on the First Preferred Fleet Mortgage with Whitaker Marine Group LLC. Per Plaintiff, such has been accomplished on Whitaker Marine Group LLC (Section 31325(d)(1)(A)-(C)) by sending that LLC notice via certified mail. (Doc. 23-2 at 1-2 ¶¶5-7 (Aff. Vierling)). And, more than 14 days have passed since actual notice occurred and Whitaker has not filed a claim in this action but instead, consents to the interlocutory sale of the vessels. (<u>Id</u>.) Similarly, Plaintiff references Exhibits 7, 8, 9, 10, and 11 (Docs. 23-7 to Doc. 23-11) as providing "actual notice" of this action and of the arrest of these vessels to each lienholder with one (1) exception -- Riverview Marina, Inc.

Plaintiff asserts that Exhibits 4, 5, and 6 to the Second Motion for interlocutory sale consist of Abstracts of Title from the National Vessel Documentation Center for the M/V MAXX B, M/V MISS ALLISON, AND M/V MISS LILLIE, showing the lienholders of record for each vessel. (Docs. 23-3 to 23-6).[4] Per Plaintiff, Exhibits 7, 8, 9, 10, and 11 (Docs. 23-7 to Doc. 23-11) establish "actual notice" of this action and of the arrest of these vessels to each lienholder with one (1) exception (Riverview Marina, Inc., 130 Yacht Basin Dr, Demopolis, AL, 36732 was attempted but service was returned unclaimed on November 3, 2022, and while Plaintiff again attempted service via its registered service agent on November 10, 2022, such was returned unclaimed December 5,

---

[4] The Vessels are referenced in the abstracts by their Official Numbers: M/V MAXX B (641456)

2022).  (Doc. 23-12)).

For the **M/V MAXX B** (Official No. 641456), the lienholders identified in the 7/25/22 abstract following entry of the Regions Preferred Mortgage (liens which do not appear to have been satisfied) are: **1) James Elmwood Repair & Maintenance, LLC**, 4600 Clarks River Road, Paducah, KY, 42003 (7/15/21 Notice of Claim of Lien, Lien established 8/18/20) (Doc. 23-4 at 5); **2) United Power Systems, LLC,** 3622 West Main Street, Gray, LA, 70359 (12/17/21 Notice of Claim of Lien, lien established 9/8/20) (Doc. 23-4 at 6); **3) ACBL Transportation Services, LLC**, 1701 E. Market Street, Jeffersonville, IN, 47130 (6/9/22 Notice of Claim of Lien, lien established 1/6/21) (id.); and **4) Riverview Marina, Inc**., 130 Yacht Drive, Demopolis, AL (6/22/22 Notice of Claim of Lien, lien established 11/8/20) (id.).

For the **M/V MISS ALLISON** (Official No. 650648), the lienholders identified in the 7/25/22 abstract following entry of the Regions Preferred Mortgage (liens which do not appear to have been satisfied) are: **1) United Power Systems, LLC,** 3622 West Main St., Gray, LA, 70359 (12/17/21 Notice of Lien, lien established 8/19/20) (Doc. 23-5 at 8); and **2) Cooper Marine & Timberlands Corp**., P.O. Box 1566, Mobile, AL 36633 (4/19/21 Notice of Claim of Lien, lien established 9/29/20) (Doc. 23-5 at 8) with Satisfaction of Claim of Lien "pending" as of 8/4/22 (Doc. 23-5 at 8-9).

For the **M/V MISS LILLIE** (Official No. 64610)**,** the lienholders identified in the 7/25/22 abstract following entry of the Regions Preferred Mortgage (liens which do not appear to have been satisfied) are: **1) Paducah River Fuel Services, LLC,** 4500 Clarks River Road, Paducah, KY 42003 (7/15/21 Notice of Claim of Lien, lien established 11/20/20) (Doc. 23-6 at 7); **2) United Power Systems, LLC,** 3622 West Main Street, Gray, LA 70359 (12/17/21 Notice of Claim of Lien, lien established 9/10/20) (Doc. 23-6 at 8); and 3) **Riverview Marina, Inc**., 130 Yacht Basin Drive,

---

(Doc. 23-4), M/V MISS ALLISON (650648) (Doc. 23-5), and M/V MISS LILLIE (64610) (Doc. 23-6).

Demopolis, AL (6/22/22 Notice of Claim of Lien, lien established 10/31/20) (Doc. 23-6 at 8).

As to **Paducah River Fuel Services, LLC**, and **James Elmwood Repair & Maintenance, LLC**, the Court is satisfied they have received actual notice as these entities are intervenors in this case and are represented by counsel.

As to **Whitaker Marine Group LLC**, it is clear from the Affidavit of Vierling, that the LLC and its CRO have actual notice of both this civil action and of the motion for interlocutory sale.

Moreover, per Plaintiff, it was unable to affect service on **Riverview Marina, Inc.** - a corporation (Doc. 23-11), and thus, there has been no "actual notice" to this lienholder. However, Plaintiff explains that it attempted service via certified mail *to its registered service agent* on November 10, 2022, but such was returned unclaimed December 5, 2022). (Doc. 23-12)). Indeed, a review of Doc. 23-12 indicates that Plaintiff attempted to serve the entity via certified mail to Riverview Marina, Inc. "c/o Fred R. Hansard." The Court is thus satisfied with Plaintiff's service efforts as to Riverview Marina, Inc.

In support of its motion as to **United Power Systems, LLC** and **ACBL Transportation Services LLC**, Plaintiff submitted certified mail return receipt cards: ACBL Transportation Services, LLC signed by unknown individual "K. Perra" on 10/15/22 (Doc. 23-7) and United Power Systems, LLC signed by unknown individual "Claire Traylor" on an illegible date (Doc. 23-10 at 1). However, Plaintiff's Supplement now indicates that actual notice has been given to these entities. See *supra*. And more than 14 days have passed since actual service of the Notice of Action Against and Arrest of Vessels on authorized agents of ACBL Transportation Services, LLC and United Power Systems, LLC, and neither company has filed a Notice of Claim.

Further, Plaintiff initially did not provide any information regarding listed lienholder **Cooper Marine & Timberlands** even though per the abstract, satisfaction of that lien remained pending.

14

However, Plaintiff's Supplement now indicates that Cooper's lien has been terminated. <u>See</u> *supra*.

Thus, the Court is satisfied that the requisite actual notice has been provided.

As such, it is **ORDERED** that Plaintiff's Second "Motion for Interlocutory Sale of Vessels under Rule E(9)" for the M/V MAXX B (Official No. 641456), M/V MISS ALLISON (Official No. 650648), and M/V MISS LILLIE (Official No. 64610) (the Vessels) (Docs. 23, 24) as Supplemented (Doc. 26), and as unopposed by intervenor claimants James Elmwood Repair & Maintenance LLC and Paducah River Fuel Services, LLC, is **GRANTED.**

A separate Decree Ordering the Sale of these Vessels shall issue in conjunction with, and pursuant to, this Order.

**DONE** and **ORDERED** this the **8th** day of **March 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**